ROUTON'S ADMINISTRATORS, Plaintiffs in Error, *vs.* LACY, Defendant in Error.

1. Under the first section of the act concerning " securities," (R. C. 1845) a notice in which the surety states that he " will no longer stand security for the principal debtor unless suit is commenced and prosecuted according to the law," *was held* sufficient, although the note was not described or referred to, the creditor not showing that he was actually misled.
2. Where there were two joint sureties, one of whom gave notice, but the other did not, *it was held,* that the surety who gave no notice was released to the extent of one half of the debt, and no more.

*Error to Moniteau Circuit Court.*

In April, 1843, T. A. Todd, as principal, and Wm. Hall and W. A. Lacy, as sureties, executed a note to John Routon for one hundred dollars, payable two days after date. Wm. Hall died in the year 1845, and his administrators, on the 21st November, 1845, served on John Routon, the creditor, a notice, of which the following is a copy : " Nov. 21st, 1845. Mr. John Routon : Sir—You are hereby notified, that the estate of William Hall, deceased, will no longer stand security for Tillman A. Todd, unless suit is commenced and prosecuted according to law. Given under our hands the day above written. Alexander F. C. Hall, William W. Hall, administrators of the estate of William Hall, deceased."

John Routon, the creditor, died in October, 1846, and the plaintiffs, Miller and Routon, were appointed his administrators. John Routon, the creditor, never brought suit, as he was required by the notice of Hall's administrators. Todd, the principal, died, and his estate proved insolvent.

In a suit on this note against Lacy, the co-security of Hall, the court below decided, that the notice given to Routon was sufficient under the statute, and that Lacy might avail himself of that notice, although he did not join in it, as a defence to the action. Exceptions were taken to these rulings of the

court, and the cause was brought here after a judgment for Lacy, the surety.

*Edwards* and *Parsons*, for plaintiffs in error. 1. The notice was not such an one as is required by the statute. *Cape* v. *Smith*, 8 Serg. & R. 112. *Erie Bank* v. *Gibson*, 1 Watts, 143. *Shehan* v. *Hampton*, 8 Ala. Rep. 945. *McBrown* v. *Governor;* 6 Porter's Rep. 2. Even if sufficient, the defendant cannot avail himself of it. 3 Dana, 160. 3. In any event, the defendant is liable for his proportion of the debt. 1 Story's Eq. 507, 508, and note 3.

*Hayden*, for defendant in error. 1. The notice was sufficient. 2. By the failure to sue, Hall's estate was discharged, and consequently the defendant, on the principle that a discharge of one joint debtor is a discharge of both. There is no difference in this respect between a discharge by a technical release and a discharge by neglect or omission to sue. 1 Story's Eq. §324–5-6. 2 Summer's Rep. 434. 1 Peters' Rep. 16. 6 Porter's Rep. 42. 3. At all events, the defendant is discharged from one half of the debt, because the creditor has put it out of his power to enforce contribution against his co-security. 4. The case cited from 6 Porter, 32, is in point for the defendant instead of the plaintiff in error.

SCOTT, Judge, delivered the opinion of the court.

1. A mere delay in calling on the principal will not discharge the surety, unless it is accompanied with a binding contract for that purpose. At common law, a mere request by the surety to bring suit, was not binding on the principal, and his neglect to comply with such request did not release the security. The surety may pay the debt when it becomes due, or he may require the creditor, in a court of equity, to enforce his demands against the principal debtor. On paying the debt, he stands in the place of the creditor, and is entitled to be subrogated to his rights. If by a valid contract with his debtor, a creditor had put it out of the power of the surety to make this remedy available, the surety was discharged.

We regard our act concerning sureties as remedial. The notice was sufficient. In a matter of this kind to require a notice in the very words of the statute, would serve no useful purpose. It would require professional assistance in every case to enable a surety to avail himself of it. The object of the notice could not have been misunderstood by the creditor. Its language was unequivocal, and could not leave him in doubt as to what he was to do. To require of the surety an accurate description of the note—its date, amount, or even the names of all the co-securities, would render it impossible to comply with the statute, in many cases, as the note is not accessible to the surety; and it is not to be expected that he could remember such circumstances. If any confusion or uncertainty should be created by reason of the surety's name being on two obligations, it is in the power of the creditor to show it by producing them.

2. The only question in the case which is attended with any difficulty is, whether one surety can avail himself of a notice given by his co-surety; or whether, if the creditor, after a notice from one surety, neglects to sue, as required by law, he will lose his recourse against all the sureties, where there may be more than one. There may be cases in which such a construction of the statute would be manifestly unjust. If the co-security should be consulted, and not wishing to be sued, should refuse to join in the notice, he would scarcely be entitled to any benefit from it. On the other hand, to maintain that the failure of the principal to sue, when required, could not be taken advantage of, so as to prevent his becoming liable for the entire debt, in cases where he had no notice, would operate to increase his responsibility and vary his undertaking, without his knowledge or consent. It may be said, that if notice to sue is given, and the creditor fails to do it, and in consequence thereof the debt is lost as to the principal, there would be no hardship in throwing the loss on the creditor, if he has given no notice to the other surety of the fact that he has been required to sue, as his failure to do what was law-

fully required of him has been the cause of the loss of his debt. The surety must look after his principal. He knows that he is bound. He had a right to give the notice to sue; from his neglect to do so, the creditor may presume, that he is content to remain bound. If his liability is not increased, if his contract is not affected to his prejudice by any act of the creditor, he has no cause to complain of the failure to bring suit. The surety, in most cases, is the cause of the credit being given. While the law will not permit a creditor to injure a surety by his conduct or neglect, yet his obligation will not be so relaxed as to make it more a snare than a guaranty for the payment of his debt.

At law, a technical release of one party to a contract, is a release of all. But in equity, a creditor may discharge one surety without discharging the other. As in cases of joint suretyship, each surety is only bound for a rateable share of the debt, if the creditor discharges one surety, it will not prevent him from resorting to the other sureties for their proportions. He can by no act increase the liability of the surety, but in case of two sureties, he may forgive one his half of the debt and compel payment by the other of his share. As the failure by Routon to sue one of the sureties, has discharged him, the other surety can only be made to pay the one half of the demand.

The other *judges* concurring, the judgment will be reversed and the cause remanded.