JACKSON COUNTY ex rel., JAMES B CLOW & SONS, a Corporation, Respondent, v. FREE-BORN ENGINEERING & CONSTRUCTION COMPANY, a Corporation, Appellant.

Kansas City Court of Appeals, October 6, 1913.

PRINCIPAL AND SURETY:    Contractor's Bond:   .Liability to Material  Man's  Vendor.  A  Contractor  entered  into  a contract with a county to place a waterworks and septic tank system in the county home for the aged and infirm, and agreed to give bond to "pay all bills for materials used in said building and labor performed thereon under said contracts." The contractor sublet a portion of the contract to a firm of plumbers who bought of relator the material and plumbing fiixtures sued for. These were delivered at the home and a part were used therein by the sub-contractors and the rest by the contractor after the sub-contractors had failed. The contractor was paid in full for the job but did not pay the subcontractors for the balance sued for, nor has relator been paid therefor. The bond was conditioned that the contractor should pay all bills for material used in said building and was made to the county and to all persons having the right to sue thereunder and by virtue of Sections 6761 and 6762, R. S. 1899. As these sections then stood a bond was

required which should be conditioned for all material used in the work whether by subcontractor or otherwise: Held that the relator is within the terms of the bond and can sue thereon although the materials were sold by relator to the subcontractors instead of to the contractors.

Appeal from Jackson Circuit Court.—*Hon. Jas. E. Goodrich,* Judge.

AFFIRMED.

*Holmes, Holmes & Page* for appellant.

*Clarence J. Spellman* for respondent.

TRIMBLE, J.—Jackson county, Missouri, entered into a contract with the defendant, Freeborn Engineering and Construction Company, whereby for $24,500 the latter agreed to furnish all labor and material to fully equip a water and septic tank system in the Jackson County Home for the Aged and Infirm. This contract provided that said construction company should give bond to the county in the sum of $12,250, conditioned that said construction company "shall pay for all material used and labor performed on this contract."

Pursuant to the contract, a bond was executed by the construction company as principal, with National Security Company, as security, conditioned that the said principal "shall pay all bills for material used in said building and labor performed thereon under said contract."

The construction company sublet a portion of its contract involving about $7000, to Allison & Hudson, a firm of plumbers. In attempting to carry out their subcontract, Allison & Hudson bought of relator a quantity of iron pipe, fittings, connections and plumbing fixtures, which the relator sold for, and delivered at, the Home to be used in the construction and installation of said plant. While no part of said materials

was furnished by relator directly to the construction company, yet after they had been furnished and a part of them used on the job by the subcontractors Allison & Hudson, the construction company took the job away from the subcontractors and finished it alone, using, however, the materials which were furnished and delivered by relator under its contract with the subcontractors. The subcontract was taken away from Allison & Hudson on April 1, 1910, and on June 10, 1910, thereafter, the construction company paid relator $900 on account. Before this suit was instituted, Allison & Hudson were adjudged bankrupts. And sometime in August, 1910, the construction company, in an account with Allison & Hudson took credit for the $900 paid to relator and also credited itself with an item of $783.03 to relator as of date July 21, 1910. As this last amount was never paid to relator, the presumption is that the construction company, by crediting itself with this sum, merely retained this amount out of the sum due Allison & Hudson in order to keep enough funds with which to pay the balance due on relator's account, which, after allowing all just credits and set-offs, was $721.91, with interest at six per cent from October 20, 1910. Of the $2016.08 worth of materials furnished by the relator, James B. Clow & Sons, all but $944.17 of it was shipped to the station near the County Home by relator after the Freeborn Construction Company had taken the contract away from Allison & Hudson and had commenced to finish the job alone. So that, after the subcontractors had been displaced, materials greater in amount than the sum now due on relator's account were furnished by relator and used by the construction company in the building. The county paid the construction company the full amount due under the contract, but the balance due relator has never been paid by anyone. After due demand, this suit was instituted in the name of Jackson county, at the relation and to the use of James B.

Clow and Sons, on the bond given by the Freeborn Engineering & Construction Company. In the trial court a jury was waived and the court rendered judgment on the bond for the face thereof to be satisfied upon the payment of the $721.91 due, with interest from October 20, 1910. The defendant Freeborn Engineering & Construction Company appealed.

The sole question presented by appellant is whether or not relator is among those for whose benefit the above mentioned bond was given; or, in other words, whether or not relator is included within the terms of the bond. Appellant claims that, as relator did not furnish the materials directly to the Freeborn Construction Company but only to a subcontractor, relator is not within the terms of said bond.

The contract and bond being executed simultaneously and for a common purpose, they are to be treated as one. And, in order to properly determine the question raised by appellant we must ascertain the intention of the parties as expressed in the contract and bond. And while that intention must be found within, and not outside of, the language used, yet we have a right to consider the situation of the respective parties to the contract and bond and the evident purpose they had in entering into them.

The language of the contract is that the Freeborn Engineering & Construction Company shall give a bond conditioned for the faithful performance of the contract and that it will "pay for all material used and labor performed on this contract." It does not read "for all material *furnished to* said construction company," but "for all material used." The language of the bond is equally broad and inclusive. In it the principal and surety declared themselves "firmly held and bound unto Jackson county, Missouri, and unto all persons having the right to sue hereon under and by virtue of sections 6761 and 6762 of the Revised Statutes of Missouri, 1899." And the condition is that

the principal shall faithfully perform the terms of the contract, and "shall pay *all bills for material used in said building.*" The contract and bond were executed November 4, 1909. At that time sections 6761 and 6762, as they appeared in the Revised Statutes of 1899, had been repealed and new sections numbered 6761 and 6762 had been enacted in their stead. [Laws of Missouri, 1909, p. 382.] These new sections, 6761 and 6762, had gone into effect August 16, 1909. So that, on the day the contract and bond were executed, November 4, 1909, the law governing such bonds stood as follows: "Section 6761. It is hereby made the duty of all officials . . . of any county . . . in this State, in making contracts for public work . . . to require every contractor for such work to execute a bond to the . . . county . . . and such bond . . . shall be conditioned for the payment for all material *used in such work* . . . *whether by subcontractor or otherwise.*" [Section 6762.] "Every person furnishing material, either as an individual or as a subcontractor for any contractor, with . . . any county . . . where bond shall be executed as provided in section 6761, shall have the right to sue on such bond in the name of the . . . county . . . for his use and benefit, etc." Under the law then it was the duty of the county court to require a bond, conditioned for the payment for all material used whether the same was used by a subcontractor or otherwise; and under section 6762 a right of action was given on said bond to every person furnishing such material. In this case the material furnished was all used on the building, part being used by the subcontractor and the remainder by the original contractor. Under such circumstances it would seem that not only are the terms of the contract and bond broad enough to include relator without regard to the statute, but also that the terms of the statute expressly provide for relator's protection by making it the county court's

duty to acquire a bond for the payment of all material used in the work whether by Allison & Hudson as subcontractors or by the original contractor the construction company.

It cannot be said that because the bond refers to persons having the right to sue by virtue of the sections as they appear in the Revision of 1899, and makes no mention of these sections as re-enacted in 1909, that the bond must, therefore, be interpreted and construed solely in the light of the sections as they were prior to the Act of 1909. Because the law says the bond shall be to the county, and also provides for a right of action thereon by every person furnishing material. So that, under the law, such person would have a right of action on the bond without regard to whether the words, ''and unto all persons having the right to sue hereon under and by virtue of sections 6761 and 6762 of the Revised Statutes of Missouri, 1899,'' were in the bond or not. It being the duty of the court to demand the bond required by law, and it being executed under the law, no terms of the bond could limit the rights explicitly given therein by the law. Besides, when the sections under which the bond was given are referred to therein, the evident intention was to refer to the law as it then existed and not as it had stood at some former time.

Nor can section 6762, as re-enacted, be regarded as giving a right of action only to those furnishing material directly to the original contractor. Because the two sections must be construed together, and section 6762 evidently gives a right of action to all persons for whose benefit and protection a bond is required by section 6761. It is inconceivable that the Legislature would, in one section, require a bond to be given for the payment of all material used whether by subcontractor or otherwise, and then in the next section limit the right of recovery on said bond to a

narrower class of persons than that covered by the section requiring the bond to be given.

In support of appellant's contention that relator is not within the terms of the bond, we are cited to Berger Mfg. Co. v. Lloyd, 209 Mo. 681. But, in that case, not only was the language of the contract and bond narrower than in the one here, but also the facts were different and the bond was executed prior to the enactment of 1909. The Berger case was first decided by the St. Louis Court of Appeals. [Berger Mfg. Co. v. Lloyd, 113 Mo. App. 205.] The majority opinion, written by Judge GOODE, shows that the contract, instead of providing for the payment by the contractor of "all material used on this contract" as the one before us does, provided simply for the payment of all materials "furnished *to the contractor*," and on this point the St. Louis Court of Appeals held that the Berger Company had not furnished the materials to the contractor. While the terms of the bond were broader than those of the contract in that case, yet the facts did not bring the Berger Company within the meaning of the bond since the material was sold and delivered to a manufacturer at its shops where it was manufactured into articles which were then used in the building. In other words, the Berger Company did not furnish to the contractor material that was used in the building within the scope and meaning of the bond. The case was, on the dissenting opinion of Judge BLAND, transferred to the Supreme Court, where the conclusion reached by the majority opinion of the St. Louis Court of Appeals was upheld. The Supreme Court say the determination of the question whether the Berger Company could recover on the bond in that suit "must be solved by ascertaining the intention of the parties to the contract and bond." The contract, as shown above, was not broad enough, because, as held by the Supreme Court, the contention of the plaintiff was unsound, that, as the materials

were furnished to the metal company and it manufactured them into certain articles and furnished them to the contractor, this was equivalent to the Berger Company furnishing them direct to Lloyd, the contractor. And as to the bond, even though it was conditioned that the contractor should make payment to the parties furnishing materials used in the work, yet as the contractor did pay in full the one furnishing to him the materials used, this was a strict compliance with the letter and spirit of the bond and contract. To sum it all up, the Berger case was decided simply on the wording of the contract and bond in that particular case and on the fact of payment by the contractor according to their strict terms. Nothing was said aobut the two sections of the statute nor was the question as to their breadth and scope under consideration. So that we do not consider the decision in the Berger case as placing relator in this case outside the pale of the statute regardless of the terms of the contract and bond or the facts as to payment by the contractor. In this case it is not shown that the contractor has fully paid the subcontractors for all the material used. On the contrary it appears that it has withheld a sufficient sum with which to pay relator's claim.

With regard to the intent and purpose of the two sections of the statute relating to bonds of this character, it has been frequently said that they are to give protection to every person who would have had a right to file a mechanic's lien on the building except for the fact that buildings of the corporations named in the act are exempt from the operation of the mechanic's lien law. [Press Brick Co. v. School District, 79 Mo. App. 665, l. c. 669; Board of Education ex rel. v. United States Fidelity Company, 149 S. W. 46, l. c. 50.] There is no doubt but that if the building in question was not exempt from the operation of the mechanic's lien law, the relator in this case would be

entitled to a lien. In such case, if the language of the contract and bond is broad enough to cover relator, the statute should not be given such a narrow construction as to exclude relator from any benefit thereof. Because the object of the statute was to extend protection to those furnishing material for use in such buildings and not to exclude them from such protection. If, therefore, the contract and bond are broad enough to include relator, there is no reason why it should be denied relief on this bond any more than on any other obligation entered into between two parties for the benefit of a class of third persons to which relator belongs. For even if it could be conceded that section 6762 was not broad enough to give a right of action to those for whom a bond is required in section 6761, still the insertion in the bond of the words "all persons having the right to sue hereon under and by virtue of sections 6761 and 6762" would not have the effect of limiting the right of recovery solely to those specified in section 6762 under a strict and literal construction thereof, nor would these words have the effect of overriding the other plain provision of the contract and bond since both these instruments must be considered together as one and the intention gathered from the four corners thereof. But there is no need of pursuing the subject further. We think that, under the facts as disclosed in this case, relator was within the terms of the contract, the bond and the statutes, and that the case should be affirmed. It is so ordered. All concur.